UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON
CASE NO_____

*Electronically Filed*

ACUITY, A MUTUAL INSURANCE COMPANY                                           **PLAINTIFF**

v.

## COMPLAINT FOR DECLARATORY JUDGMENT

BENNETT CONSTRUCTION LLC,
LOWE'S HOME CENTERS, LLC, and
I3 TRIPLE CROWN HOLDINGS LLC                                                 **DEFENDANTS**

\* \* \* \* \*

Comes now the plaintiff, Acuity, A Mutual Insurance Company (hereinafter referred to as "Acuity"), by counsel, and pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, states as follows for its Complaint for Declaratory Judgment:

### PARTIES AND DIVERSITY OF CITIZENSHIP

1. Acuity is an insurance company incorporated in Wisconsin, with its principal place of business in Wisconsin. It is licensed and authorized to transact insurance business in the Commonwealth of Kentucky.

2. The Defendant, Bennett Construction LLC ("Bennett") is a Kentucky Limited Liability Company. Its sole member is an individual residing in Kentucky. It can be served with process through its registered agent, Jason Bennett at 971 Dutch Chapel Road, Cynthiana, Kentucky 41031.

3. The Defendant, Lowe's Home Centers, LLC, ("Lowe's") is a North Carolina entity with its sole member being incorporated and having its principal place of business

in North Carolina. It is duly qualified and authorized to transact business in Kentucky and transacting business in Kentucky. It is subject to service of process in care of Corporation Service Company, as its agent for service of process at 421 West Main Street, Frankfort, Kentucky 40601.

4. I3 Triple Crown Holdings LLC ("Triple Crown") is a Kentucky limited liability company. Its sole member is I3 Triple Crown Manager, LLC, whose members are Kentucky residents. Its principal office is located in Union County, Kentucky. It can be served with process through its registered agent, Yufang Pang at 1028 Hyperion Court, Union, Kentucky 41091.

## AMOUNT IN CONTROVERSY

5. The amount in controversy exceeds the jurisdictional limits based on the assertion by Lowe's that the value of the subcontracts with Bennett was $125,311.30.

## VENUE AND JURISDICTION

6. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as there is diversity of citizenship among the parties, and the matter in controversy exceeds the sum of $75,000, exclusive of interest, attorneys' fees and costs.

7. Venue is proper in the United States District Court for the Eastern District of Kentucky, Lexington Division pursuant to 28 U.S.C. § 1391 in that some or all of the acts or omissions giving rise to this controversy took place in this district.

## NATURE OF THE CLAIM

8. This is an action for a Declaratory Judgment pursuant to 28 U.S.C. § 2201 for the purpose of construing and interpreting the terms of insurance contracts issued by Acuity to Bennett and for a determination of the rights and obligations, if any, of the parties

arising from said insurance contracts.  An actual controversy exists regarding the issue of coverage under the subject insurance policies for claims asserted by Triple Crown initially in a state court action against Lowe's, which has been referred to arbitration (the "underlying arbitration").  There is no state or federal court action pending in Kentucky between these parties. Triple Crown was named as a party to this action merely because of the potential interest they may have in the outcome of the declaration sought by Acuity.

## FACTUAL BACKGROUND

9. On January 29, 2019, Triple Crown filed suit against Lowe's in the Circuit Court of Fayette County, Kentucky, Civil Action No. 19-CI-00326.  A copy of this Complaint is attached as **Exhibit 1** and hereinafter referred to as the "Triple Crown Complaint".

10. The Triple Crown Complaint alleges construction errors, omissions, defects, misrepresentations, and false and deceptive advertising by Lowe's in the contracting for and performance of construction work on real property owned by Triple Crown and located at 3501 Pimlico Parkway and 3550 Pimlico Parkway, Lexington, Fayette County, Kentucky.

11. The Triple Crown Complaint asserts that Triple Crown entered into separate agreements with Lowe's for construction work to repair and/or demolish and rebuild balconies on multifamily apartment buildings located at 3501 Pimlico Parkway and 3550 Pimlico Parkway.  Lowe's thereafter contracted with Bennett to perform the work at 3550 Pimlico Parkway.  Another contractor performed the work on the 3501 Pimlico Parkway location, with whom Acuity had no relationship. This action seeks a declaratory judgment

as to coverage for the claims only involving the project on the real property located at 3550 Pimlico Parkway (the "3550 Pimlico contract").

12. The Triple Crown Complaint contains twelve counts against Lowe's, six of which relate to the 3550 Pimlico contract. It is alleged in Count II that Lowe's breached its contract with Triple Crown in failing to perform its duties under the contract for the work at 3550 Pimlico. Count IV alleges that Lowe's breached express warranties under the 3550 Pimlico contract. The Triple Crown Complaint alleges negligent construction of the 3550 Pimlico balconies in Count VI. Count VIII alleges that Lowe's engaged in false and deceptive advertising which induced Triple Crown to enter into the 3550 Pimlico contract. Count X alleges that Lowe's made negligent misrepresentations as to material facts that induced Triple Crown to make payment to Lowe's under the contract. In Count XII, the Triple Crown Complaint alleges that Lowe's actions caused property damage and losses to the premises. As a result of the alleged acts and omissions of Lowe's, Triple Crown seeks compensatory and punitive damages.

13. The Triple Crown Complaint alleges that the work under the 3550 Pimlico contract began on or about August 24, 2017, and that Lowe's walked away from the 3550 Pimlico contract in or around April 2018 without completing the project.

14. On or about February 20, 2019, Lowe's removed the Triple Crown action to the U.S. District Court in Lexington based on diversity of citizenship, where it was filed as *I3 Triple Crown Holdings LLC v. Lowe's Home Centers, LLC,* Case No. 5:19-CV-0057-JMH.

15. On February 27, 2019, Lowe's filed a motion to dismiss or to stay pending arbitration under the Federal Arbitration Act to enforce the arbitration provisions of its contracts with Triple Crown.

16. By Memorandum Opinion and Order issued July 24, 2019, the U.S. District Court granted Lowe's motion requiring Triple Crown to submit its claims to arbitration and dismissed the action without prejudice. A copy of the Order is attached as **Exhibit 2**. There are currently no state court or federal court actions pending between these parties.

17. By letters dated February 19, 2019 and October 22, 2019, Lowe's made demand on Bennett and its insurance carriers, including Acuity, to indemnify, defend and hold harmless for any and all claims made by Triple Crown.

18. By its Answering Statement filed in the underlying arbitration, Lowe's requested joinder of Bennett (and the other contractor) to the arbitration to assert claims against Bennett for defense and indemnification based upon the alleged indemnity provisions of its contract with Bennett. Bennett has not consented to the exercise of jurisdiction in the arbitration proceeding. A copy of Lowe's Answering Statement is attached as **Exhibit 3.**

19. The alleged contract between Bennett and Lowe's contained an indemnification clause stating as follows:

11.0   Indemnification

    11.1   Independent Contractor ("Bennett") shall defend, indemnify, and hold harmless Lowe's, … from and against any and all liabilities, direct and indirect damages, direct or indirect losses, claims, demands, assessments, actions, causes of action, costs and expenses (including but not limited to attorneys' fees) and any of them arising out of or resulting from any actual or alleged:

| | | |
|---|---|---|
| | 11.1.2 | bodily injury, sickness, disease, or death, or damage to or destruction of any property (including, without limitation, loss of use resulting therefrom), or any other injury, damage or loss arising out of or resulting or claimed to have resulted in whole or in part, directly or indirectly, from (i) any actual or alleged act or omission of Independent Contractor or of any Subcontractors, … regardless of whether or not it was caused in part by Lowe's; the breach of any obligation or warranty set forth in this Agreement by Independent Contractor; or the inaccuracy of any of Independent Contractor's representations or warranties set forth in this Agreement; |
| | 11.1.5 | the failure of the Independent Contractor or a Subcontractor to perform and complete Services ordered by Lowe's and as warranted by Independent Contractor herein; |

A copy of the Contract is attached hereto as **Exhibit 4**.

20.  Acuity had issued a policy providing business liability coverage to Bennett which was in effect at times relevant herein. Acuity has provided, pursuant to full reservation of rights, legal representation to Bennett.

21.  Acuity has denied coverage to Lowe's under Bennett's policy and declined acceptance of the tender of their defense in the underlying arbitration.

22.  Acuity alleges and avers that a controversy exists between it and the Defendants within the meaning of 28 U.S.C. § 2201 and that this Court is vested with the power in the instant case to declare and adjudicate the rights, obligations and duties of the parties under the policies of insurance at issue with reference to the underlying actions and claims raised therein.

## **THE POLICY**

23. Acuity issued Policy No. X90749 to Bennett for the policy period of 3-7-17 with renewal providing coverage through 3-7-19 (the "policy). A copy of the declarations pages and relevant coverage forms of the policy are attached hereto as **Exhibit 5.**

24. The policy provides coverage only in accordance with policy terms, conditions, definitions and exclusions.

25. The insuring agreement of the policy provides in pertinent part as follows:

**LIABILITY AND MEDICAL EXPENSES COVERAGE**

**1.     Business Liability**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury, property damage* or *personal and advertising injury* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *sui*t seeking damages for *bodily injury, property damage* or *personal and advertising injury* to which this insurance does not apply. We may, at our discretion, investigate any occurrence and settle any claim or *suit* that may result.

. . .

    **b**.    This insurance applies:

        (1)    To *bodily injury* or *property damage* only if:

            (a)    The *bodily injury* or *property damage* is caused by an *occurrence* ... and

            (b)    The … *property damage* occurs during the policy period.

        (2)    To *personal and advertising injury* caused by an offense arising out of your business, but only if the offense was

      committed in the coverage territory during the policy period.

  **c.**  *Bodily injury* or *property damage* which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under item 1 of Who Is An Insured or any *employee* authorized by you to give or receive notice of an *occurrence* or claim, includes any continuation, change, or resumption of *bodily injury* or *property damage* after the end of the policy period.

  **d.**  *Bodily injury* or *property damage* will be deemed to have been known to have occurred at the earliest time when any insured under item 1 of Who Is An Insured or any *employee* authorized by you to give or receive notice of an *occurrence* or claim:

    **(1)**  Reports all, or any part of, the *bodily injury* or *property damage* to us or any other insurer;

    **(2)**  Receives a written or verbal demand or claim for damages because of the *bodily injury* or *property damage*; or

    **(3)**  Becomes aware by any other means that *bodily injury* or *property damage* has begun to occur.

26. The definitions of the following terms are applicable to construction of the insuring agreement:

  **3.**  "*Bodily injury*" means bodily injury, sickness or disease sustained by any person, including death resulting from any of these at any time.

  **14.**  "*Personal and advertising injury*" means injury, including consequential *bodily injury*, arising out of one or more of the following offenses:

    **a.**  False arrest, detention or imprisonment;

    **b.**  Malicious prosecution;

    **c.**  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a

    room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

  d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

  e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

  f. The use of another's advertising idea in *your advertisement*; or

  g. Infringing upon another's copyright, trade dress or slogan in *your advertisement*.

17. "*Property damage*" means:

  a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the *occurrence* that caused it;

18. "*Suit*" means a civil proceeding in which damages because of *bodily injury, property damage* or *personal and advertising injury* to which this insurance applies are alleged. *Suit* includes:

  a. An arbitration proceeding in which such damages are claimed and to which the *insured* must submit or does submit with our consent; or

  b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the *insured* submits with our consent.

27. The definition of "occurrence" was amended by Endorsement IL-7092(2-11) to read as follows:

The definition of Occurrence is replaced by the following:

"*Occurrence*" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. Occurrence includes:

A. *Property damage* to *your work* if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor and the property damage to your work is included in the products-completed operations hazard;

B. *Property damage* to property other than *your work* that arises out of *your work*.

28. The Triple Crown Complaint does not contain allegations of "bodily injury" or "personal and advertising injury", thus in order for this coverage to apply, there must be covered "property damage" caused by an "occurrence."

29. Based on the allegations of the Triple Crown Complaint there are no claims asserted therein for "property damage" caused by an "occurrence" during the policy period as those terms are defined by the policy under applicable Kentucky law.

30. Furthermore and/or in the alternative, the Business Liability Coverage also contains the following exclusions, one or more of which precludes coverage for the allegations contained in the Triple Crown Complaint:

**Exclusions**

1. **Applicable to Business Liability Coverage**

    **This insurance does not apply to:**

    a. Expected or Intended Injury

    … *property damage* expected or intended from the standpoint of the insured.

    b. Contractual Liability

. . . *property damage* for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an insured contract, provided the … property damage occurs subsequent to the execution of the contract or agreement. Solely for the purpose of liability assumed in an insured contract, reasonable attorney fees and necessary litigation expenses incurred by a party other than an insured are deemed to be damages because of … property damage, provided:

(a) Liability to such party for, or for the cost of that party's defense has also been assumed in the same insured contract; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**k.** Damage to Property

*Property damage* to:

(6) That particular part of any property that must be restored, repaired or replaced because *your work* was incorrectly performed on it.

Paragraph (6) of this exclusion does not apply to *property damage* included in the *products-completed operations hazard.*

**l.** Damage To Your Product

*Property damage* to *your product* arising out of it or any part of it.

**m.** Damage To Your Work

11

> *Property damage* to *your work* arising out of it or any part of it and included in the *products-completed operations hazard*.
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
>
> **n.** Damage To Impaired Property Or Property Not Physically Injured
>
> *Property damage* to *impaired property* or property that has not been physically injured, arising out of:
>
> (1) A defect, deficiency, inadequacy or dangerous condition in *your product* or *your work*; or
>
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to *your product* or *your work* after it has been put to its intended use.

31. The policy defines the relevant terms in the exclusions as follows:

    **8.** "*Impaired property*" means tangible property, other than *your product* or *your work*, that cannot be used or is less useful because:

    **a.** It incorporates *your product* or *your work* that is known or thought to be defective, deficient, inadequate or dangerous;

    **b**. You have failed to fulfill the terms of the contract or agreement;

    if such property can be restored to use by:

    **a.** The repair, replacement, adjustment or removal of *your product* or *your work;* or

    **b.** Your fulfilling the terms of the contract or agreement.

12

**9.**     "*Insured contract*" means:

. . .

**f.**     That part of any other contract or agreement pertaining to your business … under which you assume the tort liability of another party to pay for … *property damage* to a third person or organization.   Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

. . .

**16.**     "*Products-completed operations hazard*":

**a.**     Includes all . . . *property damage* occurring away from premises you own or rent and arising out of *your product* or *your work* except:

. . .

(2)     Work that has not yet been completed or abandoned. However, *your work* will be deemed completed at the earliest of the following times:

(a)     When all of the work called for in your contract has been completed.

(b)     When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c)     When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

13

21. "*Your product*" means:

   a. Any goods or products, other than real property manufactured, sold, handled, distributed or disposed of by:

      (1) You;

      . . .

   b. Containers (other than vehicles), materials, parts, or equipment furnished in connection with such goods or products.

   *Your product* includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of *your product*; and

   b. The providing of or failure to provide warnings or instructions.

      . . .

22. "*Your work*" means:

   a. Work or operations performed by you or on your behalf; and

   b. Materials, parts or equipment furnished in connection with such work or operations.

   *Your work* includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of *your work*; and

   b. The providing of or failure to provide warnings or instructions.

32. Based upon the allegations contained in the Triple Crown Complaint, and the language and exclusions contained in the policy, Acuity has no coverage obligation

under the policy for any claim or damage asserted therein, nor an obligation to defend Lowe's or Bennett against such claims.

33. The Breach of Contract, Breach of Warranties, Negligent Misrepresentation and False Advertising claims asserted against Lowe's in the Triple Crown Complaint do not constitute "property damage" caused by an "occurrence" as required by the policy's insuring agreement and/or are excluded from the coverage of the Acuity policy.

34. Bennett had no relationship with Triple Crown to support a claim of negligent misrepresentation or false advertising, and no coverage under the Acuity policy exists even if it had been responsible for that conduct.

35. Damages consisting of repairs or replacement to remedy Bennett's work are not "property damage" caused by an "occurrence" under the policy or Kentucky law and/or are excluded from coverage under the Acuity policy.

36. The indemnity agreement in Bennett's contract with Lowe's was not an "insured contract" as defined in the policy and was thus excluded by the contractual liability exclusion.

37. Acuity has no coverage obligation because the allegations contained in the Triple Crown Complaint do not constitute a claim for "property damage" caused by an "occurrence", as those terms are defined in the policy and/or because these claims are excluded from coverage under the policy's exclusions set forth above.

38. The policy also contained the following endorsement listing Lowe's in the Schedule of Additional Insureds, but only for certain liability, as set forth below:

**ADDITIONAL INSURED – OWNERS LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION**

This endorsement modifies insurance provided under the following:

> BIS-PAK BUSINESS LIABILITY AND MEDICAL EXPENSE COVERAGE FORM
>
> **1**.  The following is added to Who Is An Insured:
>
> Any person(s) or organization(s) shown in the Schedule, but only with respect to liability for … *property damage*… caused, in whole or in part, by:
>
> **a**.  Your acts or omissions; or
>
> **b**.  The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated below.
>
> **2**.  With respect to the insurance afforded to these additional insureds, the following additional insureds, the following additional exclusions apply:
>
> This insurance does not apply to … *property damage* occurring after:
>
> **a**.  All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or
>
> **b**.  That portion of *your work* out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

39.   Acuity has no coverage obligation to Lowe's as an additional insured because the allegations contained in the Triple Crown Complaint do not state a claim for "property damage" caused by Bennett's acts or omissions in the performance of its ongoing operations for Lowe's and/or any insurance afforded would be excluded by the endorsement's exclusions.

40. In addition to the foregoing provisions, Acuity pleads all other conditions, terms, warranties, limits, definitions and exclusions of the Policy that may also be found to be applicable and reserves the right to amend its Complaint for Declaratory Judgment as additional or more specific information becomes available.

41. Kentucky law should control the interpretation of the policy.

## DECLARATORY RELIEF SOUGHT

42. Acuity seeks a judgment declaring the rights and duties of Acuity relative to an actual, present and existing controversy among Acuity and the Defendants as to Acuity's obligations, if any, under the policy issued to Bennett for any claims asserted in the Triple Crown Complaint and underlying arbitration.

43. Acuity seeks a declaration that the claims asserted against Lowe's in the Triple Crown Complaint for which Lowe's seeks indemnity and a defense do not state a claim for "property damage" caused by an "occurrence" for which coverage is provided under the Acuity Policy and/or are excluded from coverage under the policy.

44. In addition and/or in the alternative, Acuity seeks a declaration that the policy would impose no duty to indemnify or defend Lowe's because the indemnity provisions of the contract between Bennett and Lowe's are not an "insured contract" and would thus be excluded by the contractual liability exclusion of the Acuity policy.

45. In addition and/or in the alternative, Acuity seeks a declaration that the above-referenced language of the insuring agreement and exclusions in the policy would exclude coverage for the damages claimed in the Triple Crown Complaint and underlying arbitration proceeding against Bennett.

46. Acuity further seeks a declaration that Lowe's is not an additional insured under the Acuity policy for the claims asserted in the Triple Crown Complaint and/or that coverage would be excluded for Lowe's under the policy endorsement exclusions.

47. Acuity also seeks a declaration that it has no duty to defend Lowe's in the underlying arbitration and has no duty to indemnify Lowe's for any damages that may be awarded against it in the underlying arbitration.

48. In addition, Acuity also seeks a declaration that it has no obligation to indemnify or defend Bennett for the claims asserted in the underlying arbitration.

WHEREFORE, Plaintiff Acuity demands as follows:

1. That Defendants be required to appear and answer herein;

2. That this Court issue a declaration that:

    a. Acuity is not obligated to indemnify or defend Lowe's for the claims asserted in the underlying arbitration;

    b. Acuity is not obligated to indemnify or defend Bennett for the claims asserted in the underlying arbitration;

    c. The exclusions contained in the policy exclude coverage for the damages sought in the Triple Crown Complaint and in the underlying arbitration; and

    d. Acuity has no obligation to provide any coverage to Lowe's as an additional insured under its policy for the claims asserted in the underlying arbitration.

3. For such further legal and equitable relief as this Court deems just and proper.

Respectfully submitted,

/s/ Pamela Adams Chesnut
PAMELA ADAMS CHESNUT
JAMES M. INMAN
GREEN CHESNUT & HUGHES, PLLC
201 E. Main Street, Ste. 800
Lexington, Kentucky 40507
Tel: (859) 475-1471
Fax: (859) 455-3332
pchesnut@gcandh.com
jinman@gcandh.om
ATTORNEYS FOR PLAINTIFF
ACUITY, A MUTUAL INSURANCE
COMPANY